**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KEITH M. JOHNS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-9381-ILRL-SS** |
| **MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, UNITED STATES OF AMERICA** | |

**REPORT AND RECOMMENDATION**

The plaintiff, Keith M. Johns ("Johns"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423.

**PROCEDURAL HISTORY**

On February 4, 2005, Johns filed an application for a period of disability. He reported that he became disabled on December 8, 2005. R. 53-55. He included a statement of self-employment income for January, 2004 to December, 2004 for which he reported gross income of $3,962.00, zero expenses, and net income of $3,962.00. R. 51. On June 21, 2005, a disability examiner determined that he was not disabled. R. 28. On June 23, 2005, his application was denied. Although he could not perform his past relevant work as a tile setter, the Commissioner determined that he was not prevented from doing work which required less strenuous effort. R. 37-40. On August 5, 2005, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 28,

2007. R. 20, 34and 234. On July 29, 2007, the ALJ issued a fully favorable decision. R. 10-17. On August 28, 2007, the Appeals Council notified Johns that it was reviewing the decision. It noted that, although he reported self-employment income of $3,962 for 2004, the Internal Revenue Service had not reported to the Social Security Administration that he filed a self-employment income tax return for 2004. R. 219-222. On October 3, 2007, the Appeals Council determined that he was not insured on December 8, 2004, the onset date of his disability. R. 4-9.

On December 7, 2007, Johns filed a complaint for review of the final decision of the Commissioner. Rec. doc. 1. The parties submitted cross-motions for summary judgment. Rec. docs. 11, 14 and 15.

Johns has been represented by counsel throughout these proceedings.

## STATEMENT OF ISSUE ON APPEAL

Did the Commissioner err in determining Johns was not insured as of December 8, 2004, the alleged date of disability onset?

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ and the Appeals Council made the following findings relevant to the issues on appeal:

1. Johns was not insured on December 8, 2004 or thereafter until the date of the Commissioner's decision.[1]

---

[1] The ALJ determined that Johns met the insured status requirements of the Social Security Act through September 30, 2008. R. 16. The Appeals Council determined that Johns was not insured on December 8, 2004, but adopted the ALJ's findings two through five. R. 9.

2. Johns did not engage in substantial gainful activity after December 8, 2004, the alleged onset date.

3. Johns has the following severe impairment: mental retardation and disorders of the back as established by consultative examination by Dr. Lester Culver and medical records by Dr. Melvin Parnell. These are severe impairments within the meaning of Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985) and the Regulations (20 CFR 404.1520(c))).

4. The severity of Johns' mental retardation meets the criteria of section 12.05(C)) of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)) which requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

5. Johns has been under a disability, as defined in the Social Security Act, from December 8, 2004 through the date of the ALJ's decision, June 29, 2007 (20 CFR 404.1520(d)).

## ANALYSIS

a. **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Newton v. Apfel, 209 F.3d at 453; Greenspan v. Shalala, 38 F.3d

232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[2] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and

---

[2] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

**b.      Testimony at the Hearing.**

Johns was born in 1955. R. 241. He finished the eleventh grade at East Jefferson High School. R. 241. Some of his classes were special education. R. 241-42. He could not read. R. 242. He could sign his name. He relied on his wife to tell him what he had to do. R. 242. He could prepare a simple grocery list. R. 243. He took reading lessons at Westminister Towers but he could not learn to read. R. 243-44. He sat around the house and watched TV. R. 244. He had four children and twelve grandchildren. R. 244. He had a driver's license. R. 244. The test was read to him. R. 245.

Johns last worked on December 8, 2004. R. 245. He was self-employed. R. 245. He had worked for the City of Kenner for many years, then started his own lawn care business. He was in the ceramic tile business at the time he had a serious auto accident. R. 245, When he did housework, he experienced severe pain in his neck, arm and back. R. 246. He had back pain. Id. He had problems lifting objects. Id. While his right hand was strong, he had no strength in his left hand. Id. He tried to work in June of 2005, but could not pick up the cement and tiles as required by the job. R. 247.

Johns rated the pain in his back, arm and neck as an eight. R. 248. He had lost about 40 pounds prior to the hearing and was undergoing tests to determine why he was losing weight. R. 249. He described his medication. R. 256-57. He reported that he did not have any energy. R. 257.

About fifteen years before the hearing, he had undergone back surgery with a fusion at L4-5. R. 257. He had also had surgery on his left knee. R. 258.

Dr. Parnell had instructed him to go physical therapy, but it was not clear whether Johns went to the physical therapist. R. 255-56. The ALJ asked Johns' attorney to obtain the records of other physicians who were treating him. R. 256.

The vocational expert testified that, with the limitations described by the ALJ, Johns possessed a light residual functional capacity and there were jobs available. R. 260-61. If he could not stand or walk six hours out of a work day, he would be limited to sedentary work. R. 262. There was a small pool of unskilled jobs available at the illiterate sedentary level. R. 262.

**c.**     **Medical Evidence**.

Melvin Parnell, M.D., an orthopedist, treated Johns from 1999 through at least March 20, 2007. R. 172. On May 5, 2003, Johns experienced pain in his neck and right shoulder. A strong anti-inflammatory, pain medication and Medrol Dosepak were prescribed. R. 119. On May 12, 2003, Johns' wife called Dr. Parnell to report he was not any better. Dr. Parnell recommended physical therapy. R. 119. On June 11, 2003, he reported that his neck pain was "killing him". There were abnormal findings on the physical exam. An MRI was recommended. R. 117. It was suggestive of a disc herniation in one view, but another view indicated a bone spur. Dr. Parnell recommended conservative care. R. 115. On July 1, 2003, there was some evidence of improvement. R. 114. On July 22, 2003, Dr. Parnell recommended that Johns reduce his activities. His medications were increased. R. 113. On August 20, 2003, he reported that he would be starting a new job in a week, which would require moving heavy tiles. Dr. Parnell told him to anticipate a

flare-up in his back symptoms. R. 112. On September 25, 2003, he reported problems with his back and knees. Dr. Parnell recommended that he find lighter type work. R. 111.

On December 6, 2003, Johns went to the East Jefferson General Hospital ("EJGH") emergency department with complaints of chest pain. It was determined that the pain was non-cardiac. R. 153-56.

On January 19, 2004, Johns underwent surgery at EJGH for an abdominal abscess caused by an old suture. The abscess was opened, drained and resutured. He was discharged on pain medication and antibiotics. R. 143-150.

On February 19, 2004, Johns was seen by Dr. Parnell and reported pain in his neck, back and knees. He had just completed a job which required a lot of heavy lifting. He was diagnosed with strains in the cervical and lumbar region and a contusion on his right knee. R. 107. On March 29, 2004, he reported problems with his neck and back. R. 106. On August 9, 2004, he reported neck and low back pain. He had performed heavy tile work which caused a flare-up in his pain. R. 103. On October 14, 2004, he reported increased pain in his neck after a display at a Wal-Mart fell on his neck. R. 101. On October 28, 2004, he reported low back pain, which Dr. Parnell attributed to stress following the death of Johns' father. R. 100. On December 7, 2004, he reported increased pain. R. 99.

On December 8, 2004, Johns went to EJGH emergency room following a single vehicle motor vehicle accident. He had multiple abrasions to the arms and head. There was a laceration on the right arm which required stitches. R. 126-42.

On December 17, 2004, Dr. Parnell performed outpatient surgery on Johns at EJGH for a closed reduction and fracture of his left thumb. R. 98 and 122. On January 3, 2005, he reported neck and back pain. His thumb was healing. His medications were changed. R. 98. On January 24, 2005, he reported left hand pain. X-rays indicated that the fracture was healed and in good alignment. R. 97. On February 3, 2005, Dr. Parnell recommended that he do more exercises with his left hand. R. 97.

On April 21, 2005, Johns was seen by Gary F. Carroll, M.D., an internist, for a consultative examination. Dr. Carroll concluded Johns could engage in standing and walking activities without difficulty and sedentary activities. R. 159-63.

From March 31, 2005 through June 8, 2006, Johns returned regularly to Dr. Parnell with complaints of headaches and pain in his neck and back. R. 183-204.

On July 26, 2006, Dr. Parnell saw Johns on an emergency basis because of pain in the thoracic and lumbar spine after he fell out of his attic and landed on his feet. R. 180. On August 14, 2006, he reported problems from his neck to his toes. R. 179. On September 12, 2006, he reported to Dr. Parnell that he was doing a little better. R. 178. On September 15, 2006, he reported that he was miserable. R. 177. On October 23, 2006, Dr. Parnell administered a cortisone injection. R. 176. On November 6 and December 4, 2006, Dr. Parnell found some improvement. R. 175. On January 8, 2007, Johns reported neck and low back pain. R. 174. On February 12, 2007, he was seen by Dr. Parnell, who recommended cortisone injections for low back pain. R. 173.

On March 20, 2007, Dr. Parnell reported that he believed Johns was totally disabled because of his neck and back problems. R. 172.

9

On May 28, 2007, Lester Culver, Ph.D., completed a psychological report. He concluded that Johns' intellectual functioning ranged from mildly deficient to borderline. His verbal skills were poor and his arithmetic skills were limited. He needed help managing his funds. R. 206-14.

**d.    Plaintiff's Appeal.**

Did the Commissioner err in determining Johns was not insured as of December 8, 2004, the alleged date of disability onset?

**1.    The applicable law.**

To be entitled to a period of disability and disability insurance benefits under Title II of the Act, a claimant must be both disabled and insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. An individual is insured for Title II benefits if he has the requisite quarters of coverage or credits. 42 U.S.C. § 423(c)(1); 20 C.F.R. §§ 404.101, 404.130. An individual is credited with quarters of coverage based on his earnings covered under Social Security. 20 C.F.R. § 404.140. After an individual turns 31, he must have 20 quarters of coverage during the 40-quarter period ending with the quarter of the onset of disability. 20 C.F.R. § 404.130(b). In 2004, the minimum amount of earnings required for coverage for a quarter was $900.00.[3]

An individual must establish that his disability arose before the expiration of his date last insured. 20 C.F.R. §§ 404.101, 404.131, and 404.320(b)(2). If a claimant becomes disabled after he has lost insured status, the claim must be denied. Oldham v. Schweiker, 660 F.2d 1078, 1080 (5th Cir. 1981).

---

[3] See Automatic increases for quarters of coverage found on Social Security's website at: http://www.ssa.gov/OACT/COLA/QC.html.

The Commissioner is required to maintain records of a claimant's earnings as evidence of the amount of wages and self-employment income derived by a claimant and the periods in which such income was derived. 42 U.S.C. § 405(c)(2),(3); 20 C.F.R. § 404.801. The Commissioner tracks the Social Security earnings records of a self-employed individual by means of the personal income tax return Form 1040 with a Schedule SE (self-employment) and a Schedule C (business profit and loss statement). If an individual does not file such a return and pay the self-employment taxes, the Commissioner's records will reveal no self-employment income, which in turn means there will be no coverage for purposes of insured status. See 20 C.F.R. §§ 404.101(b), 404.803. The Commissioner's records "shall be evidence . . . of the amounts of wages paid to, and self-employment income derived by, an individual and of the periods in which such wages were paid and such income was derived." 42 U.S.C. § 405(c)(3); 20 C.F.R. § 404.803. The Commissioner may amend the Social Security records if errors are brought to its attention within three years, three months, and fifteen days of the year in question. 42 U.S.C. § 405(c)(1)(B); 20 C.F.R. § 404.802. An amended tax return can be used to document self-employment income if it is filed prior to the expiration of the time limitation. See 20 C.F.R. § 404.822(b).

A Form 1099 is not a "tax return" for purposes of ascertaining an individual's Social Security earnings. SSR 82-20C, 1982 WL 31417 at *4. A Form 1099 reports gross income; whereas a self-employment income tax return includes a Schedule SE which computes net earnings from self-employment on which Social Security taxes are paid. "[T]o add self-employment income to his earnings records, a claimant must show that he timely filed a tax return of his self-employment

income," which includes not only the Form 1040, but also the requisite attachments including Schedule C or its equivalent. Martlew v. Celebrezze, 320 F.2d 887, 889 (5th Cir. 1963).

## 2. **The facts.**

On August 7, 2007, the Commissioner determined that it could not process the ALJ's favorable decision because Johns did not have insured status on December 8, 2004. The Commissioner found that Johns was last insured on September 30, 1997. R. 217-18. On August 28, 2007, the Commissioner notified Johns that the ALJ's decision was under review because he was not insured on December 8, 2004. R. 219-20. The Commissioner stated:

> In finding that you were insured, the Administrative Law judge accepted the Social Security office's determination that you had self-employment income in the amount of $3,962 in 2004 based on your statement at Exhibit 1D, page 9 and a Form 1099-MISC (R. 51-52) which you prepared for yourself for that year. However, the Social Security Administration's record of your earnings can only be credited with self-employment income based on an income tax return of self-employment income filed within three years, three months, and 15 days after the end of the taxable year, and based on the enclosed report, retrieved on August 27, 2007, the Internal Revenue Service has still not reported to the Social Security Administration that you filed a self-employment income tax return for 2004. Absent a report from the Internal Revenue Service, and absent a copy of self-employment income tax return for 2004 and proof of filing with the Internal Revenue Service, the Social Security Administration's record of your earnings cannot be credited with self-employment income and quarters of coverage in 2004.

R. 220 (citations omitted). Johns was notified that he could present additional evidence within thirty days of the date of the letter. R. 221. On September 19, 2007, counsel for Johns sent the Appeals Council a copy of the Form 1099-MISC and a IRS wage and income transcript for Johns and his wife. R. 224-33. He did not send a Form 1040 tax return for 2004 with Schedules SE and C.

12

On October 3, 2007, the Appeals Council issued its unfavorable decision which includes the following:

> With his letter of September 9, 2007 to the Appeals Council, the representative submitted an Internal Revenue Service's transcript of an income tax return filed by the claimant and his wife for 2004, including a transcript of the claimant's Form 1099-MISC for that year, already in the record. The representative equated Form 1099-MISC with a self-employment income tax return. However, a Form 1099-MISC reports gross income, and a self-employment income tax return is a Schedule SE which computes net earnings from self-employment on which Social Security taxes are paid and which is applicable only for net earnings of $400 or more. . . .
>
> \* \* \*
>
> The claimant qualifies to report net earnings from self-employment in the amount of $1,600 for 2004 under the "non-farm option," available to him. . . . However, he cannot be given credit for such earnings unless he files a timely amended income tax return to include a Schedule SE reporting net earnings from self-employment under the optional method. The claimant has until April 15, 2008 to file that return. Further, **even if the claimant files a timely amended return to report under the option for 2004, he would not be insured on December 8, 2004**. Earnings of $900 was [sic] needed for a quarter of coverage in 2004, so earnings of $1,600 would be enough for one of quarter of coverage. An additional quarter of coverage in 2004 would result in insured status through the first quarter of 2004, or March 31, 2004, and not thereafter.

R. 8-9.

On December 7, 2007, Johns filed his complaint for review of the decision of the Appeals Council. In April 2008, Johns prepared an amended 2004 income tax return. Rec. doc. 15 (Exhibit 1). He presents a certified mail receipt indicating that the return was received by the IRS on April 8, 2008 and a canceled check payable to the IRS which was negotiated on April 12, 2008. Id. (Exhibits 2 and 3). The amended return reflects that Johns changed the results for 2004 from a net

13

loss of $1,651 to net earnings from self-employment in the amount of $2,272. Rec. doc. 15 (Exhibit 1 at Schedule C).[4]

### 3. **Conclusion.**

It will be assumed that the amended Form 1040 tax was filed prior to April 15, 2008. The net earnings of $2,272 which Johns now reports for 2004 are not enough to provide him with sufficient credits for 2004. In 2004, the minimum amount of earnings required for coverage for a quarter was $900.00 and therefore Johns' amended return needed to reflect at least $3,600.00 in net earnings for 2004. The earnings reported on the amended return are insufficient to render Johns insured on December 8, 2004. There was no error in the decision of the Appeals Council of October 3, 2007.

The Commissioner's notice of August 28, 2007 (R. 219-20) and the October 3, 2007 decision of the Appeals Council (R. 7-9), provided Johns with ample opportunity to remedy the situation prior to April 15, 2008.

### **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 14) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 11) be DENIED.

---

[4] The Commissioner's records, however, reflect that as of September 15, 2008, Johns had no earnings on file for 2004. Rec. doc. 14 (Attachment). It contends that its records are the evidence of self-employment income and the taxes paid on such income. 20 C.F.R. § 404.803.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana this 28th day of January, 2009.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**